SHAUN K. MUAINA, ESQ.
Nevada Bar No. 12829
HENNESS & HAIGHT
8972 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Telephone: (702) 862-8200
Facsimile: (702) 862-8204
shaun@hennessandhaight.com

STUART PURDY
CA BAR No. 239878 (*pro hac vice pending*)
TYSON GAMBLE
CA BAR No. 266677 (*pro hac vice pending*)
SIMON GREENSTONE PANATIER, PC
3780 Kilroy Airport Way, Suite 540
Long Beach, California 90806
Telephone (562) 590-3400
Facsimile (562) 590-3412
spurdy@sgptrial.com
tgamble@sgptrial.com

A. GENTRY SMITH
MO BAR No. 46090 (pro hac vice pending)
MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC
1015 Locust Street, Suite 1200
St. Louis, Missouri 63101
Telephone: (314) 241-2003
Fax: (314) 241-4838
agsmith@mrhfmlaw.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TYLER WALL and LORISSA HOTTEL,<br><br>Plaintiffs,<br><br>vs.<br><br>AVON PRODUCTS, INC.;<br>BARRETTS MINERALS INC.;<br>BRENNTAG NORTH AMERICA, INC.<br>(sued individually and as successor-in-interest to<br>MINERAL PIGMENT SOLUTIONS, INC. and<br>as successor-in-interest to WHITTAKER<br>CLARK & DANIELS, INC.);<br>BRENNTAG SPECIALTIES LLC f/k/a<br>BRENNTAG SPECIALTIES, INC. f/k/a<br>MINERAL PIGMENT SOLUTIONS, INC. | CASE NO.:<br><br><br><br><br>**JURY TRIAL DEMANDED** |

1  (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.);
2  CHARLES B. CHRYSTAL COMPANY, INC.;
3  CHATTEM, INC. a subsidiary of SANOFI-AVENTIS U.S. LLC (sued individually and as
4  successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to THE
5  GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND
6  COMPANY);
   COTY, INC.;
7  PFIZER INC.;
   SPECIALTY MINERALS INC. (sued
8  individually and as a subsidiary of MINERALS TECHNOLOGIES INC.); and
9  WHITTAKER CLARK & DANIELS, INC.,

10                                    Defendants.

11              **ORIGINAL COMPLAINT FOR DAMAGES**

12         Come now Plaintiffs, TYLER WALL and LORISSA HOTTEL, by and through their

13  counsel of record, and hereby state their Original Complaint for Damages as follows:

14
15         1.      This action arises from certain injuries incurred by Plaintiff TYLER WALL.

16  Plaintiff TYLER WALL has contracted and has otherwise been diagnosed as suffering from

17  malignant pleural mesothelioma. Malignant pleural mesothelioma is a rapidly debilitating and fatal

18  form of cancer affecting the lining of an individual's lungs, the only known cause of which in

19  North America is asbestos exposure. Plaintiff TYLER WALL was diagnosed as suffering from

20  malignant pleural mesothelioma on January 12, 2021.

21              **SUBJECT MATTER JURISDICTION AND VENUE**

22
23         2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because

24  the amount in controversy as to the Plaintiffs exceeds $75,000.00, exclusive of interest and costs,

25  and because complete diversity exists between the parties as Plaintiffs are citizens of the State of

26  Idaho, which is different from the state where Defendants are incorporated and have their principal

27  place of business.

28

3.     Venue is proper in this Court pursuant 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to this lawsuit occurred in this District where Defendants are subject to personal jurisdiction in accordance with 28 U.S.C. § 1391 (c).

4.     Plaintiffs have satisfied all conditions precedent to the filing of this action.

5.     All of the named Defendants listed on the caption are foreign corporations who are amenable to jurisdiction in the courts of Nevada by virtue of their respective conduct of substantial and/or systematic business in Nevada which subjects them to the jurisdiction of the Nevada Courts pursuant to the Nevada Long-Arm Statute. Each Defendant corporation does or in the past mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of raw asbestos fibers of various kinds and grades, and/or asbestos-containing products, and/or asbestos-containing talc and/or chalk, and/or other finished and unfinished asbestos-containing talcum powder products, and/or any other powder-like product, and/or asbestos-containing cosmetics (hereinafter collectively referred to as "Defendants' Products") which are or in the past were sold, distributed, and used in Nevada.  As mentioned above, Plaintiff TYLER WALL was exposed to Defendants' Products purchased in and while he was residing in Nevada.

## **PARTIES**

6.     Plaintiffs TYLER WALL and LORISSA HOTTEL are residents and citizens of the City of Chubbock, State of Idaho.

7.     Defendant, AVON PRODUCTS, INC., was and is a company incorporated under the laws of the State of New York with its principal place of business in New York.  At all times material hereto, AVON PRODUCTS, INC. was a manufacturer of asbestos-containing Avon talcum powder products.  AVON PRODUCTS, INC. has and does business in the State of Nevada.

8.     Defendant, BARRETTS MINERALS INC., was and is a company incorporated under the laws of the State of Delaware with its principal places of business in Montana and New York.  At

all times material hereto, BARRETTS MINERALS INC. was a supplier of asbestos-containing talc. BARRETTS MINERALS INC. has and does business in the State of Nevada.

9.    Defendant, BRENNTAG NORTH AMERICA, INC. (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Pennsylvania.  At all times material hereto, BRENNTAG NORTH AMERICA, INC. (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) was a supplier of asbestos-containing talc. BRENNTAG NORTH AMERICA, INC. (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) has and does business in the State of Nevada.

10.    Defendant, BRENNTAG SPECIALTIES LLC f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), was and is a limited liability company incorporated under the laws of the State of Delaware with its principal places of business in New Jersey. At all times material hereto, BRENNTAG SPECIALTIES LLC f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) was a supplier of asbestos-containing talc. BRENNTAG SPECIALTIES LLC f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) has and does business in the State of Nevada.

11.    Defendant, CHARLES B. CHRYSTAL COMPANY, INC., was and is a company incorporated under the laws of the State of New York with its principal place of business in Connecticut.  At all times material hereto, CHARLES B. CHRYSTAL COMPANY, INC. was a

supplier of asbestos-containing talc.  CHARLES B. CHRYSTAL COMPANY, INC. has and does business in the State of Nevada.

12.    Defendant, CHATTEM, INC. a subsidiary of SANOFI-AVENTIS U.S. LLC (sued individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY), was and is a company incorporated under the laws of the State of Tennessee with its principal place of business in Tennessee.  At all times material hereto, CHATTEM, INC. a subsidiary of SANOFI-AVENTIS U.S. LLC (sued individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY) was a manufacturer of asbestos-containing Gold Bond Foot Powder.  CHATTEM, INC. a subsidiary of SANOFI-AVENTIS U.S. LLC (sued individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY) has and does business in the State of Nevada.

13.    Defendant, COTY, INC., was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York.  At all times material hereto, COTY, INC. was a manufacturer of asbestos-containing Coty Airspun Loose Face Powder.  COTY, INC. has and does business in the State of Nevada.

14.    Defendant, PFIZER INC., was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York.  At all times material hereto, PFIZER INC. was a supplier of asbestos-containing talc.  PFIZER INC. has and does business in the State of Nevada.

15.    Defendant, SPECIALTY MINERALS INC. (sued individually and as a subsidiary of MINERALS TECHNOLOGIES INC.), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Pennsylvania.  At all times material hereto,

SPECIALTY MINERALS INC. (sued individually and as a subsidiary of MINERALS TECHNOLOGIES INC.) was a supplier of asbestos-containing talc. SPECIALTY MINERALS INC. (sued individually and as a subsidiary of MINERALS TECHNOLOGIES INC.) has and does business in the State of Nevada.

16.     Defendant, WHITTAKER CLARK & DANIELS, INC., was and is a company incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey. At all times material hereto, WHITTAKER CLARK & DANIELS, INC. was a supplier of asbestos-containing talc. WHITTAKER CLARK & DANIELS, INC. has and does business in the State of Nevada.

## FACTUAL BACKGROUND

17.     Plaintiff TYLER WALL was wrongfully exposed to and inhaled, ingested or otherwise absorbed asbestos fibers, an inherently dangerous toxic substance, through his late mother's, Andrea Anderson's, regular and frequent use of Johnson's Baby Powder on Plaintiff as an infant and child from approximately 1987 to 1996, through his father's, Leslie Wall's, regular and frequent use of Johnson's Baby Powder on Plaintiff as an infant from approximately 1987 to 1990, and through his stepfather's, Steve Valerio's, regular and frequent use of Johnson's Baby Powder on Plaintiff as an infant from approximately 1988 to 1990. Plaintiff was also exposed to asbestos through his late mother's regular and frequent use of Johnson's Baby Powder while in close proximity to Plaintiff from approximately 1992 to 2004, and Avon talcum powders while in close proximity to Plaintiff from approximately 1988 to 1996. Plaintiff was also exposed to asbestos through his regular and frequent personal use of Gold Bond Foot Powder from approximately 1999 to 2003. Plaintiff was also exposed to asbestos through his wife's, Plaintiff LORISSA HOTTEL's, regular and frequent use of Johnson's Baby Powder on their children while in close proximity to Plaintiff from approximately 2014 to 2020, and through her regular and frequent use of Avon talcum powders and Coty Airspun loose face powder while in close

proximity to Plaintiff from approximately 2010 to 2020.  During these time periods, Plaintiff resided in the following locations:  Colorado Springs, Colorado, from approximately 1987 to 1990; Farmington, New Mexico, from approximately 1990 to 1992; Las Vegas, Nevada, from approximately 1993 to 2002; Pocatello, Idaho, from approximately 2002 to 2020, and 2021 to the present time; and El Paso, Texas, from approximately 2020 to 2021.  While Plaintiff's family members used these asbestos-containing products while in close proximity to Plaintiff, dangerously high levels of asbestos fibers were released into the air, and these fibers were frequently inhaled and ingested by Plaintiff TYLER WALL.

18.     Plaintiff TYLER WALL was exposed to Defendants' Products which were manufactured, sold, or distributed by the Defendants.

19.     At all times herein set forth, Defendants' Products were being employed in the manner and for the purposes for which they were intended.

20.     Plaintiff TYLER WALL's exposure to and inhalation or absorption of asbestos fibers emanating from the use of Defendants' Products was completely foreseeable and could or should have been anticipated by the Defendants.

21.     Defendants knew or should have known that the asbestos fibers contained in Defendants' Products had a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling or otherwise absorbing them.

## FIRST CAUSE OF ACTION
## NEGLIGENCE AGAINST ALL DEFENDANTS

22.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

23.     At all times herein relevant, Defendants had a duty to exercise reasonable care and caution for the safety of Plaintiff TYLER WALL and others personally using and around Defendants' Products.

24. At all material times, Defendants are or were miners, manufacturers, distributors, processors, importers, converters, compounders, and/or retailers of raw asbestos fiber of Defendants' Products.

25. The Defendants, acting through their agents, servants, and/or employees caused certain Defendants' Products to be placed in the stream of interstate commerce with the result that Defendants' Products came into use by or were used in close proximity to Plaintiff TYLER WALL.

26. Plaintiff TYLER WALL was exposed to asbestos through his personal use and his family members' use of Defendants' Products which were mined, manufactured, processed, imported, converted, compounded, and/or sold by the Defendants, most of the exposure being within the State of Nevada.

27. Plaintiff TYLER WALL was exposed to Defendants' Products, which exposure directly and proximately caused him to develop an illness known and designated as mesothelioma.

28. Defendants knew or should have known that the asbestos fibers contained in Defendants' Products had a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling or otherwise absorbing them.

29. Defendants, acting by and through their servants, agents and employees duly authorized and acting within the scope and authority of their employment had a duty to design, manufacture and sell Defendants' Products that were not unreasonably dangerous or defective and/or a duty to warn Plaintiff TYLER WALL, his family members, and foreseeable users of and bystanders to Defendants' Products of the dangers and defects which the Defendants created, knew, or within the exercise of reasonable care should have known, to render them safe for their intended and foreseeable uses.

30. Plaintiff TYLER WALL, through his family members' use and through his personal use, was exposed to Defendants' Products that were manufactured, processed, distributed, supplied and/or sold by Defendants. Defendants knew or should have known that persons such as

Plaintiff TYLER WALL would come into contact with, be in close proximity to, and would be exposed to Defendants' Products.

31.     Plaintiff TYLER WALL sustained injuries, illnesses, disabilities and/or damages caused by no fault of his own and which could not be avoided through the use of reasonable care. Plaintiff TYLER WALL's development of an asbestos-related disease was directly and proximately caused by the negligence and carelessness of Defendants in that they manufactured, processed, sold, supplied or otherwise put Defendants' Products into the market and into the stream of interstate commerce while they knew, or in the exercise of ordinary care should have known, that Defendants' Products were deleterious, poisonous, cancer-causing and/or inherently dangerous and harmful to Plaintiff TYLER WALL's body, lungs, respiratory system, skin, health, and general well-being.  Further, Defendants knew, or in the exercise of reasonable care should have known, that Plaintiff TYLER WALL and his family members would not know of such dangers to Plaintiff's health.

32.     Defendants' actions, as stated herein, also constituted a conscious and flagrant disregard of the rights and safety of Plaintiff TYLER WALL, and by engaging in such actions, Defendants acted with the necessary malice, fraud, and oppression that justifies holding them liable for punitive damages.

33.     Specifically, Defendants are guilty of one or more of the following acts or omissions amounting to fraudulent misconduct, malice, and gross negligence:

> a.     Intentionally or with gross negligence disregarded the safety of Plaintiff TYLER WALL by including asbestos in Defendants' Products, or using asbestos, even though it was completely foreseeable and could or should have been anticipated that persons such as Plaintiff, who was personally using or around Defendants' Products, would inhale or otherwise absorb asbestos;

b.     Intentionally or with gross negligence disregarded the safety of Plaintiff by including asbestos in Defendants' Products, or using asbestos, when the Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling or otherwise absorbing them;

c.     Intentionally or with gross negligence disregarded the safety of Plaintiff by including asbestos in Defendants' Products, or using asbestos, when adequate substitutes for the asbestos in them were available;

d.     Intentionally or with gross negligence disregarded the safety of Plaintiff by removing any warnings regarding the dangers of asbestos from the packing of Defendants' Products or on Defendants' Products themselves supplied to persons working with and around said Products in their intended and/or reasonably foreseeable manner;

e.     Intentionally or with gross negligence disregarded the safety of Plaintiff by failing to provide any or adequate warnings to persons working with and around Defendants' Products of the dangers of inhaling or otherwise absorbing asbestos fibers in them;

f.     Intentionally or with gross negligence disregarded the safety of Plaintiff by failing to provide any or adequate instructions concerning the safe methods of working with and being around Defendants' Products, including specific instructions on how to avoid inhaling or otherwise absorbing the asbestos fibers said Products;

g.     Intentionally or with gross negligence disregarded the safety of Plaintiff by failing to conduct tests on Defendants' Products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards

to which persons such as Plaintiff might be exposed while working with and around said Products;

h.     Intentionally or with gross negligence disregarded the safety of Plaintiff by failing to adequately label, warn, package, market, distribute, install, remove, or use asbestos in a reasonable manner which would minimize or eliminate the escape of asbestos dust fibers, therefore adding to the exposure of Plaintiff;

i.     Intentionally or with gross negligence disregarded the safety of Plaintiff by failing to take adequate steps to remedy the above failures including, but not limited to: (1) failure to recall or require removal of Defendants' Products, coupled with; (2) ongoing failure to conduct research as to how to cure or minimize asbestos injuries and how to use, install, or distribute asbestos so as to render it safe; and, (3) failure to promptly and safely remove asbestos in place;

j.     Intentionally or with gross negligence disregarded the safety of Plaintiff by failing to require and/or advise persons such as Plaintiff of hygiene practices designed to reduce and/or prevent the escape of asbestos dust fibers and to avoid inhaling or otherwise absorbing the asbestos dust fibers in said Products.

34.     Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing Defendants' Products into the stream of commerce knew, or in the exercise of reasonable care should have known, about the risks associated with said Products. Defendants' Products were defective at the time they left the control of the Defendants.

35.     Defendants were negligent and breached their duty of due care to Plaintiff TYLER WALL by taking or failing to take the actions as previously alleged to avoid harm to Plaintiff and

other foreseeable users, in light of the reasonably foreseeable dangers caused by the design, manufacture, sale, and/or distribution of Defendants' Products at issue in the stream of commerce.

36.     The hazards posed by exposure to Defendants' Products and the resulting injuries and damages to Plaintiff TYLER WALL were reasonably foreseeable, or should have been reasonably foreseen by Defendants.

37.     Subsequent to the initial sale of Defendants' Products to Plaintiff TYLER WALL and his family members, Defendants continued to accumulate additional knowledge regarding the hazards of Defendants' Products.

38.     Defendants had a continuing duty to provide post-sale warnings of dangers associated with Defendants' Products, and post-sale recall to users or to recall products that were discovered to be unreasonably dangerous.

39.     At the time Defendants' Products left Defendants' control without adequate warnings or instructions, Defendants created an unreasonably dangerous condition that they knew or should have known would pose a substantial risk of harm to reasonably foreseeable claimants such as Plaintiff TYLER WALL.  In the alternative, after Defendants' Products left Defendants' control, Defendants became aware of or in the exercise of ordinary care should have known that their Products posed a substantial risk of harm to reasonably foreseeable users and bystanders, such as Plaintiff, and failed to take reasonable steps to give adequate warning or instruction or to take any other reasonable action under the circumstances.

40.     As a direct, actual and proximate result of one or more of the foregoing acts, breach of duty and/or omissions on the part of the Defendants, Plaintiff TYLER WALL was exposed to and inhaled or otherwise absorbed asbestos fibers causing Plaintiff to develop mesothelioma. Plaintiff has been compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his asbestos-induced mesothelioma and condition.  Plaintiff has also experienced great physical pain and mental anguish

as a result of his asbestos-induced mesothelioma, as well as a substantial loss of income.

41.     As a result of the above, Plaintiffs seek damages as hereinafter demanded.

**SECOND CAUSE OF ACTION**
**STRICT LIABILITY AGAINST ALL DEFENDANTS**

42.     Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

43.     At all material times, Defendants were engaged in the manufacture, distribution, supply, sale, assembly, production, construction, and/or specification of Defendants' Products.

44.     Defendants, acting through their agents, servants, and/or employees, placed in the stream of commerce Defendants' Products which were designed, manufactured, distributed, marketed, and/or sold by Defendants and that were defective, unsafe and unreasonably dangerous for their intended and/or foreseeable use with the result that said Products came into use by Plaintiff TYLER WALL and his family members.

45.     Defendants placed Defendants' Products on the market and knew or should have known they would be used without inspection for defects.

46.     Defendants failed to design, manufacture, market, distribute, supply, and sell Defendants' Products in such a manner as to render them safe for their intended and foreseeable uses.  By way of example, and not limitation, Defendants:

    a.     Failed to design, develop, manufacture and test Defendants' Products in such a manner as to render them safe for their intended and foreseeable use, when Defendants knew or should have known that the foreseeable use of and intended purpose of Defendants' Products was by persons, specifically Plaintiff TYLER WALL and his family members, who used Defendants' Products causing Plaintiff's exposures to asbestos;

    b.     Marketed and sold Defendants' Products that were in an unreasonably

dangerous and defective condition, presenting a hazardous risk to Plaintiff's well-being;

    c.    Failed to recall or attempt to repair the defective Defendants' Products when Defendants are and have been aware of the propensity of said Products to injure Plaintiff;

    d.    Failed to properly test Defendants' Products to ensure that they were reasonably safe for use throughout their lifetime.

47.    Moreover, when Defendants' Products left Defendants' possession and were placed on the market, they were defective in that:

    a.    When used in the intended or reasonably foreseeable manner, Defendants' Products were not reasonably safe for their intended use;

    b.    When used in the intended or reasonably foreseeable manner, Defendants' Products failed to perform as safely as would be expected by an ordinary user or consumer;

    c.    When used in the intended or reasonably foreseeable manner, Defendants' Products caused a risk of harm beyond that which would be contemplated by an ordinary user or consumer;

    d.    Defendants' Products were defectively designed because they were more dangerous than would be contemplated by an ordinary user or consumer, and also because the risks of the products outweighed their benefits;

    e.    Defendants' Products were defectively manufactured as they failed to comply with their own specifications.

48.    Defendants violated the requirements of Section 402A of the Restatement of Torts 2d, all of which proximately resulted in Plaintiff TYLER WALL's asbestos-related mesothelioma.

49.    Additionally, although Defendants knew, or in the exercise of ordinary care should

have known, that Defendants' Products were deleterious and highly harmful to Plaintiff TYLER WALL's health, Defendants nonetheless:

    a.    Failed to advise or warn Plaintiff and his family members of the dangerous characteristics of Defendants' Products;

    b.    Failed to provide Plaintiff and his family members with the knowledge as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if any, to protect Plaintiff from being harmed by exposure to Defendants' Products;

    c.    Failed to place any or adequate warnings on containers of Defendants' Products alerting Plaintiff and his family members of the dangers to Plaintiff's health caused by contact with Defendants' Products; and

    d.    Failed to take reasonable precautions or to exercise reasonable care to publish, adopt and enforce a safety plan and/or a safe method of handling Defendants' Products in a safe manner.

50.    Defendants' Products were also defective due to any and inadequate warnings or instructions during and after the time of marketing in that Defendants knew, or in the exercise of reasonable care should have known, about the risks associated with Defendants' Products and failed to provide any, reasonable and/or adequate warnings or instructions in light of the likelihood that said Products would cause serious physical harm to Plaintiff TYLER WALL.

51.    As a direct and proximate result of using Defendants' Products for the general purposes for which they were designed and intended, Plaintiff TYLER WALL was exposed to asbestos and was injured as described herein.

52.    Accordingly, Defendants are strictly liable to Plaintiff TYLER WALL for their failure to warn and for the defective design and manufacture and/or marketing, distributing, supplying and selling defective Defendants' Products.

53. As a result of the above, PLAINTIFFS seek damages as are hereinafter demanded.

**THIRD CAUSE OF ACTION**
**PRODUCT LIABILITY – INADEQUATE DESIGN OR FORMULATION**
**AGAINST ALL DEFENDANTS**

54. Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

55. Defendants acted unreasonably in designing and/or formulating Defendants' Products which were harmful to Plaintiff TYLER WALL's body, lungs, respiratory system, skin and health. Defendants acted unreasonably in the following acts and/or omissions:

    a. Failing to adopt a practical, feasible, and otherwise reasonably alternative design that was safer, that could have been reasonably adopted, and that would have prevented or substantially reduced the risk of harm to individuals such as Plaintiff TYLER WALL without substantially impairing the usefulness, practicality or desirability of Defendants' Products; and

    b. Using a design that was so unreasonable that reasonable person, aware of the relevant facts, would not use Defendants' Products of this design.

    c. Allowing the use of talc that contains asbestos and asbestos fibers to be used in the manufacture of Defendants' Products when said Products were supposed to be asbestos free.

56. Defendant's unreasonable acts in designing Defendants' Products manufactured, distributed, sold and specified by Defendants were a proximate cause of Plaintiff TYLER WALL's development of mesothelioma, and as a consequence of which through no fault of his own, he was severely injured, disabled and damaged.

57. As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

*///*

**FOURTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**

58.    Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

59.    The Defendants impliedly warranted that Defendants' Products were of good and merchantable quality and fit for their particular intended use.

60.    The implied warranty made by the Defendants that Defendants' Products were of good and merchantable quality and fit for their particular intended use was breached in that certain harmful, poisonous, and deleterious matter was given off into the atmosphere during Plaintiff TYLER WALL's and his family members' use of Defendants' Products.

61.    Defendants caused Plaintiff TYLER WALL's injuries, illnesses, disabilities, and damages as stated above by manufacturing, selling, installing, and distributing Defendants' Products which failed to meet express and implied warranties of merchantability and fitness for intended purposes upon which Plaintiff had a right to rely and did rely.

62.    As a direct and proximate result of the implied warranty of good and merchantable merchantable quality and fitness for their particular intended use, Plaintiff TYLER WALL developed mesothelioma.

63.    As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

**FIFTH CAUSE OF ACTION**
**WILLFUL AND WANTON CONDUCT**

64.    Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

65.    Plaintiff TYLER WALL and others in his position personally used and was in close proximity to Defendants' Products used and/or manufactured by the Defendants, and the exposure and hazard to each of them, in Plaintiff TYLER WALL's presence as well as others, was known

or in the exercise of reasonable care should have been anticipated by the Defendants and each of them.

66.     The Defendants have known or should have known since at least 1929 of medical and scientific data which clearly indicated that Defendants' Products were hazardous to the health and safety of Plaintiff TYLER WALL and others in Plaintiff's position, and prompted by pecuniary motives the Defendants, individually and collectively, ignored and failed to act upon said medical and scientific data and conspired to deprive the public and particularly the users of said medical and scientific data, therefore depriving them of the opportunity of free choice as to whether or not to expose themselves to Defendants' Products.  As a result, Plaintiff TYLER WALL was severely damaged as is set forth below.

67.     The Defendants intentionally continued to conceal the dangers of asbestos exposure from 1929 through 1970's, thus denying Plaintiff TYLER WALL the knowledge with which to take necessary safety precautions, such as periodic x-rays and medical examinations, cessation of smoking, and avoidance of further dust exposure.  Specifically, Defendants' intentional, willful and wanton conduct included the following acts and omissions:

a.     failure to warn prior users when the Defendants had knowledge of the need for monitoring due to prior exposure;

b.     failure to issue recall type letters to prior users;

c.     frustrating the publication of articles and literature from the 1930's through at least 1976;

d.     rejection by top management of advice of corporate officials to warn of the hazards of Defendants' Products, such rejection being motivated by the possibility of adverse effects on profits; and

e.     delaying the use of and/or providing intentionally inadequate warnings on Defendants' Products.

68.     The acts and omissions of each of the Defendants as hereinabove set forth were intentional, willful and wanton, and done with willful disregard of the safety of Plaintiff TYLER WALL and others similarly situated at a time when each of the Defendants had knowledge, or should have had knowledge of, the dangerous effect of Defendants' Products upon the body of human beings, including Plaintiff TYLER WALL and others similarly situated, and even though forewarned by tests, standards, promulgations of rules and regulations, statutes, and ordinances recognized by the Defendants and subscribed to by them, nevertheless placed into the stream of commerce for their own profit dangerous Defendants' Products with full knowledge that Defendants' Products were being used and would be used in the future to the detriment of the health of Plaintiff TYLER WALL and others similarly situated, and PLAINTIFFS are thereby entitled to punitive damages.

69.     Accordingly, as a result of the Defendants' conduct which was conducted willfully, wantonly and with malice, and was grossly negligent and in total disregard for the health and safety of users and bystanders such as Plaintiff TYLER WALL, Plaintiffs therefore seek exemplary and punitive damages against Defendants to punish the Defendants for their actions, which were willful, wanton, gross, with malice, and in total disregard of the health and safety of the users of Defendants' Products.

## SIXTH CAUSE OF ACTION
## FAILURE TO WARN

70.     Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

71.     At all times material hereto, the Defendants knew or should have known of the harmful effects and/or dangers of using and/or otherwise being exposed to Defendants' Products and of exposure to inhalable asbestos.

72.     Defendants had a pre- and post-sale duty to warn Plaintiff TYLER WALL and his family members of the dangers associated with the use and/or inhalation of asbestos dust and fibers.

73.     Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from Defendants' Products, the Defendants failed to warn and/or inadequately warn Plaintiff TYLER WALL and his family members of the dangers including, but not limited to:

      a.     Failing to provide adequate cautions, warnings, hazard statements and/or explanations with Defendants' Products which should have been designed to provide Plaintiff TYLER WALL and his family members knowledge about the hazards caused by exposure to and/or dust from Defendants' Products and how to eliminate such hazards;

      b.     Failing to provide adequate product inserts, informative brochures, training literature, posters, and/or other written materials with Defendants' Products which should have been designed to provide Plaintiff TYLER WALL and his family members knowledge about the hazards caused by exposure to and/or dust from Defendants' Products and how to eliminate such hazards;

      c.     Failing to conduct in-person training sessions with users and bystanders designed to provide them knowledge about the hazards caused by exposure to and dust from Defendants' Products, and how to eliminate the hazards;

      d.     Failing to adequately test and research Defendants' Products as to the hazards

created during their use and failed thereafter to provide the results of such tests and research to exposed persons such as Plaintiff TYLER WALL;

e.   Failing to inspect Defendants' Products to determine if the Defendants' Products being used were deleterious to the health of exposed users and bystanders;

f.   Failing to design, process and transport Defendants' Products in a manner intended to minimize exposure during conditions of normal use;

g.   Failing to specify and market Defendants' Products on the express agreement that necessary engineering controls, practices, and other industrial hygiene controls would be implemented in conjunction with use of Defendants' Products after it was known or should have been known that adequate protective measures were not being implemented;

h.   Failing to recall their defective Defendants' Products or manufacture a reasonably safer alternative;

i.   Failing to take adequate precautions and industrial hygiene measures to protect exposed individuals such as Plaintiff TYLER WALL when personally using and/or in close proximity to Defendants' Products including, but not limited to, providing protection from dust and fibers emanating from use; failing to provide warnings to Plaintiff TYLER WALL his family members that exposure to dust and fibers from Defendants' Products was hazardous and carcinogenic;

j.   Otherwise failing to act reasonably under the totality of the circumstances.

74.   Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from Defendants' Products, Defendants acted unreasonably in failing to provide adequate warnings and/or instructions as to the hazards associated with exposure to Defendants' Products.  Defendants had a continuing duty to provide post-sale warnings of dangers associated with Defendants' Products to users and bystanders.

75.     At the time Defendants' Products left Defendants' control without adequate warning or instruction, Defendants created an unreasonably dangerous condition that they knew or should have known would pose a substantial risk of harm to a reasonably foreseeable claimant, such as Plaintiff TYLER WALL.  In the alternative, after Defendants' Products left Defendants' control, Defendants became aware of or in the exercise of ordinary care should have known that Defendants' Products posed a substantial risk of harm to a reasonably foreseeable user and bystander such as Plaintiff TYLER WALL, and failed to take reasonable steps to give adequate warning or instruction or to take any other reasonable action under the circumstances.

76.     Defendants' failure to provide adequate warnings as to the hazards associated with exposure to Defendants' Products or to provide proper instructions on the use, handling, and storage of Defendants' Products caused Plaintiff TYLER WALL to develop mesothelioma and as a consequence of which he was injured, disabled and damaged, therefore Plaintiffs hereby make a claim for damages from the Defendants jointly and severally.

77.     As a result of the Defendants' failure to warn, Plaintiff TYLER WALL suffered the injuries, illnesses, disabilities and/or damages hereinafter alleged.

## SEVENTH CAUSE OF ACTION
## FRAUD

78.     Plaintiffs reallege the preceding paragraphs as if fully set forth herein, and to the extent necessary, plead this cause of action in the alternative.

79.     **Fraudulent Misrepresentation**; Defendants are liable for their fraudulent misrepresentations:

a.     First, each of these Defendants, via its employees, agents, advertisements, or any other authorized person or document, represented that certain material facts and representations were true when they were not. The specific identities of these employees, agents, advertisements, or any other

authorized persons or documents are maintained in Defendants' records. Such records remain in the exclusive control of Defendants pursuant to Defendants' respective document retention policies. While Plaintiffs do not currently know all of the specific advertisements, or the names of all of the employees, agents, or any other authorized persons who made the representations, Plaintiffs will have access to this information once discovery has commenced and will be able to specifically name the advertisements as well as the employees, agents, or any other authorized persons.

b.    Second, Defendants falsely represented that the products they manufactured, supplied, or specified for use were not hazardous to humans. These false representations were made before and during the years that Plaintiff TYLER WALL and his family members purchased and Plaintiff was exposed to asbestos from Defendants' Products. Such false representations were made either directly to Plaintiff and his family members, or to a third party intending and reasonably expecting that the substance of those false representations would be repeated to Plaintiff and his family members.

c.    Third, Defendants had knowledge or belief that the representations were false when they made them, or they made the false representations recklessly and without regard for their truth.

d.    Fourth, Defendants intended to induce Plaintiff and his family members, and/or the same class of persons as Plaintiff and his family members, to rely and act on the false representations or their substance.

e.    Fifth, Plaintiff and his family members reasonably and justifiably relied on

Defendants' false representations or the substance of these false representations.

f.   Sixth, Plaintiff TYLER WALL developed mesothelioma.

g.   Seventh, Plaintiff's and his family members' justifiable reliance on those false representations was a substantial factor in causing Plaintiff's mesothelioma and the resulting damages thereto.

80.   **Fraudulent Concealment (Nondisclosure)**: Defendants are liable for their fraudulent concealment (nondisclosure).

a.   First, each of these Defendants made false representations that were so misleading (e.g. misleading "half-truths") that they gave rise to a fraud cause of action even in the absence of a specific relationship or transaction as between each Defendant and Plaintiff TYLER WALL and his family members. Specifically, Defendants stated that Defendants' Products could be used safely while concealing that they were in fact lethal because they contained and released asbestos fibers.

b.   Second, Defendants (i) had exclusive knowledge of material facts that were not known to and his family members (as set forth above) and misrepresented those material facts to Plaintiff and his family members, (ii) actively concealed those material facts from and his family members with an intent to induce and his family members to act and rely on Defendants' false representations and omissions of those material facts, (iii) made partial representations but also suppressed material facts, as set forth above, and (iv) made factual representations, but did not disclose facts which materially qualified those representations. Such nondisclosures included Defendants representing Defendants' Products as safe when used as intended and as fit

for the particular purpose for which they were marketed, while not disclosing the facts that said Products contained asbestos that would become airborne during the intended and foreseeable use of the Products, rendering them dangerous and unfit for their intended purpose.

c.     Third, each Defendant entered into a relationship and/or a transaction with and his family members sufficient to give rise to a duty to disclose. For example, Plaintiff and his family members used or Plaintiff otherwise encountered Defendants' products that were purchased either directly from Defendants, Defendants' authorized dealers or suppliers, or any other entity upon which Defendants derived a direct monetary benefit directly from Plaintiff's and his family members' purchase and use of the products. As for another example, Defendants directly advertised their products to those in Nevada and elsewhere as a symbol of freshness, cleanliness, and purity. Defendants advertised and marketed their products as being only the beacon of "freshness" and "comfort," eliminating friction on the skin, absorbing "excess wetness," helping keep skin feeling dry and comfortable, "clinically proven gentle and mild.," and to promote beauty.   The Defendants compelled men and women through advertisements to dust themselves with the products to mask odors, and to use them to promote beauty.   Defendants derived direct monetary benefit from consumers' use of their asbestos-containing products because Plaintiff and his family members decided to use or purchase Defendants' Products.

d.     Fourth, Plaintiff and his family members did not know of the concealed facts and false representations.

e.     Fifth, Defendants intended to deceive Plaintiff and his family members by concealing the facts, and/or by making false material representations without disclosing additional facts that would have materially qualified those representations, and Defendants intended to induce Plaintiff and his family members to act in reliance upon the false representations or omissions made.

f.     Sixth, had the omitted information been disclosed, Plaintiff and his family members would have reasonably behaved differently.

g.     Seventh, Plaintiff TYLER WALL developed mesothelioma.

h.     Eighth, each Defendant's concealment and intent to induce Plaintiff and his family members to act and rely on the false representations were a substantial factor in causing Plaintiff's mesothelioma and the resulting damages thereto.

81.     **Conspiracy to Commit Fraudulent Misrepresentation**: Plaintiffs hereby incorporate by reference the allegations of Paragraph 79 as if fully stated herein. Defendants are liable for their conspiracy to commit fraudulent misrepresentation.

a.     First, Defendants were aware that their conspirators, which included all co-Defendants and others, planned to commit fraudulent misrepresentation against Plaintiff TYLER WALL and his family members, and/or the same classes of persons as Plaintiff and his family members.

b.     Second, Defendants agreed with their conspirators and intended that the fraudulent misrepresentation be committed.

c.     Third, Plaintiff developed mesothelioma.

       d.     Fourth, each Defendant's participation in the conspiracy was a substantial factor in causing Plaintiff's mesothelioma and the resulting damages thereto.

82.     **Conspiracy to Commit Fraudulent Concealment (Nondisclosure)**: Plaintiffs hereby incorporate by reference the allegations of Paragraph 80 as if fully stated herein. All Defendants are liable for their conspiracy to commit fraudulent concealment.

       a.     First, Defendants were aware that their conspirators, which included all co-Defendants and others, planned to commit fraudulent concealment against Plaintiff TYLER WALL and his family members, and/or the same class of person as Plaintiff and his family members.

       b.     Second, Defendants agreed with their conspirators and intended that the fraudulent concealment be committed.

       c.     Third, Plaintiff TYLER WALL developed mesothelioma.

       d.     Fourth, each Defendant's participation in the conspiracy was a substantial factor in causing Plaintiff's mesothelioma and the resulting damages thereto.

83.     **Knowledge of Hazards**: At all times pertinent hereto, Defendants owed Plaintiff TYLER WALL a duty, as provided for in the Restatement (Second) of Torts §552, and *Barmettler v. Reno Air, Inc.*, 956 P2d 1382, 1387 (Nev. 1998), to abstain from injuring his person, property, or rights. In violation of that duty, these Defendants, and each of them, did do the acts and omissions, when a duty to act was imposed, as set forth herein, thereby proximately causing injury to Plaintiff. Such acts and omissions consisted of acts falling within the Restatement (Second) of Torts §552, and *Barmettler v. Reno Air, Inc.*, 956 P2d 1382, 1387 (Nev. 1998), and more specifically were (i) making representations as fact when those representations were not true and which the Defendants did not believe to be true, (ii) making assertions of fact that were not true,

which the Defendants had no reasonable ground for believing to be true, and (iii) the suppression of facts when a duty existed to disclose them, all as are more fully set forth herein, and the violation of which as to any one such item gave rise to a cause of action for violation of Plaintiff's rights as provided for in the aforementioned statutes.

84.    Since 1924, Defendants have known and possessed of true facts consisting of medical and scientific data and other knowledge which clearly indicated that Defendants' Products were and are hazardous to the health and safety of Plaintiff TYLER WALL and others similarly situated. Defendants engaged in the following acts and omissions:

a.    Did not label any of the aforementioned asbestos-containing products as to the hazards of such products to the health safety of Plaintiff and others in his and his family members' positions using these products, and therefore causing Plaintiff's exposures, when the knowledge of such hazards was existing and known to Defendants, and each of them, since 1924. By not labeling Defendants' Products as to their said hazards, Defendants, and each of them, made false representations to Plaintiff and his family members that it was safe for them to use and for Plaintiff to be exposed to Defendants' Products when in fact these things were not true and Defendants did not believe them to be true.

b.    Suppressed information relating to the danger of using the aforementioned products by requesting the suppression of information to Plaintiff and his family members,  Plaintiff's and his family members' classes of persons, and the general public concerning the dangerous nature of the aforementioned products to all persons, including users, bystanders and household members, by not allowing such information to be disseminated in a manner which would give general notice to the public and knowledge

of the hazardous nature thereof when Defendants were bound to disclose such information.

c.   Sold the aforementioned products to the public, including Plaintiff, his family member and others in Nevada and other states without advising them of the dangers of using such products, and dangers to those persons' household members, when Defendants knew of such dangers and had a duty to disclose such dangers. Thus, Defendants caused to be positively asserted to Plaintiff, his family members, and the public false representations which Defendants had no reasonable ground for believing to be true, in a manner not warranted by the information possessed by Defendants, that it was safe for Plaintiff and his family members to Defendants' Products, causing Plaintiff's exposures to asbestos, and that said Products did not pose a risk of harm.

d.   Suppressed and continue to suppress from everyone, including Plaintiff and his family members, medical, scientific data, and knowledge of the accurate results of studies including, but not limited to, Waldemar C. Dreesen of the United States Public Health Service's 1933 report to the National Safety Council the results of a study conducted among tremolite, talc and slate workers. The study indicated that the talc was a hydrous calcium magnesium silicate, being 45% talc and 45% tremolite, and the National Safety Council stated "The results of the study seemed to indicate a relationship between the amount of dust inhaled and the effect of this dust on the lungs of the workers." As early as 1934, the National Safety Council was publishing information stating that "a cause of severe pulmonary injury is asbestos, a silicéte of magnesium." In the September 1935 issue of

National Safety News, an article entitled *No Halfway Measures in Dust Control* by Arthur S. Johnson reported lowered lung capacity resulting from "asbestosis" and "similar conditions" that developed "from exposure to excess of many mineral dusts relatively low in free silica content." The article further noted that claims for disabilities from workers who alleged exposure to "clay, talc, emery, and carborundum dusts" had "claims prosecuted successfully." The article concluded that "[i]n the absence of adequate diagnoses, occupational histories and a more satisfactory method of adjudicating claims than prosecution at common law, we must conclude that it is necessary to find a practical method for controlling all mineral dusts."

e.   Belonged to, participated in, and financially supported the Industrial Hygiene Foundation, Asbestos Information Association, the Asbestos Textile Institute (ATI), and other industry organizations, including the Cosmetic, Toiletry, and Fragrance Association (now known as the Personal Care Products Council), which actively promoted the suppression of information of the dangers to users of and bystanders to the aforementioned products for and on behalf of Defendants, and each of them, thereby misleading Plaintiff and his family members to Plaintiff's prejudice through the suggestions and deceptions set forth above in this cause of action. ATI's Dust Control Committee, which changed its name to the Air Hygiene Committee of ATI, was specifically enjoined to study the subject of dust control; discussions in such committee were held many times of (i) the dangers inherent in asbestos and the dangers which arise from the lack of

control of dust and (ii) the suppression of such information from 1946 to a date unknown to Plaintiffs at this time.

f.      Knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis in 1930 with the study of mine and mill workers at the Thetford asbestos mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina.  This information was disseminated through the ATI and other industry organizations to all other Defendants, and each of them, herein. Between 1942 and 1950, Defendants, and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and cancer, which information was disseminated through the ATI and other industry organizations to all other Defendants herein. Thereby, Defendants made false representations that were suggested as facts, which were likely to and did mislead Plaintiff and his family members for want of communication of true facts, which consisted of the previously described medical and scientific data and other knowledge by not giving Plaintiff and his family members the true facts concerning such knowledge of these dangers, when Defendants were bound to disclose them.

g.      Failed to warn Plaintiff, his family members, and others similarly situated of the hazardous nature of Defendants' Products. In 1968, a study presented at the American Industrial Hygiene Conference and published in the American Industrial Hygiene Association Journal concluded that "[all] of the 22 talcum products analyzed have a.. . fiber content. . . averaging 19%. The fibrous-material was predominantly talc and contained minor amounts

of tremolite, anthophyllite, and chrysotile as these are often present in fibrous talc mineral deposits.   Unknown significant amounts of such materials in products that may be used without precautions may create an unsuspected problem." [Cralley, L.J., et al.; *Fibrous and Mineral Content of Cosmetic Talcum Products*, 29 Ant Ind. Hyg. Assoc. J.350 (1968).] Defendants failed to warn Plaintiff, his family members, and others similarly situated that Defendants' Products are, among other things, dangerous when breathed and cause pathological effects without noticeable trauma, although Defendants possessed knowledge that their Products were dangerous and a threat to the health of persons coming into contact therewith and were under a duty to disclose this.

h.     Concealed from Plaintiff, his family members, and others similarly situated the true nature of Plaintiff's exposures, the fact that Defendants knew that exposure to respirable asbestos meant that Plaintiff would inhale this asbestos, significantly increasing his risk of developing asbestosis, lung cancer, and mesothelioma; that Plaintiff that had in fact been exposed to respirable asbestos; that the products to which Plaintiff was exposed would cause pathological effects in the human body without noticeable or perceptible trauma to warn him of injury; and Defendants engaged in these acts and omissions while under a duty to and bound to disclose this information.

i.     Failed to provide information to the public at large including buyers, users and physicians of Plaintiff for the purpose of conducting physical examinations of anyone whom came in contact with asbestos as to the true nature of the hazards of asbestos, in order for such physicians to diagnose

and treat individuals coming into contact with asbestos, in that the products to which Plaintiff had been exposed would cause pathological effects without noticeable trauma, even though Defendants were under a duty to supply such information and such failure was and is likely to mislead persons, including Plaintiff, as to the dangers and risk of harm to which they were exposed.

j.      Affirmatively misrepresented that Defendants' Products were safe to use and handle, when Defendants knew such representations were false when made, or made those false representations recklessly and without regard for whether they were true.

85.     Each of the foregoing acts, suggestions, assertions, and forbearances to act when a duty existed to act, the said Defendants, and each of them, having such knowledge, knowing Plaintiff TYLER WALL and his family members did not have such knowledge, and Plaintiff would breathe such material innocently, was done falsely and fraudulently and with full intent to induce Plaintiff to be in a dangerous environment and to cause him to remain unaware of the true facts, all in violation of the Restatement (Second) of Torts §552, and *Barmettler v. Reno Air, Inc.,* 956 P2d 1382, 1387 (Nev. 1998).

## BASIS FOR PUNITIVE DAMAGES

86.     **Malice, Oppression, and Fraud**: Plaintiffs reallege the preceding paragraphs as if fully set forth herein, and to the extent necessary, plead this cause of action in the alternative. Defendants are liable for punitive damages because they engaged in the conduct that caused Plaintiffs harm with malice, oppression, or fraud.

a.      First, these Defendants committed malice in that they acted with intent to harm when they caused Plaintiff TYLER WALL's asbestos exposures, and

because their conduct was despicable and was done with a willful and knowing disregard of the rights and safety of others.

b.    Second, these Defendants committed oppression in that their conduct was despicable and subjected Plaintiff to cruel and unjust hardship in knowing disregard of his rights.

c.    Third, the Defendants committed fraud in that they intentionally and fraudulently made false representations and did so intending to harm Plaintiff, or with reckless disregard for whether their fraud would harm Plaintiff.

87.    These Defendants' conduct constituting malice, oppression, and fraud was committed by, authorized by, and adopted by one or more officers, directors, and managing agents within the corporate hierarchy of each Defendant, who acted on behalf of each Defendant.

88.    As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities", and each of them, Plaintiff TYLER WALL sustained the injuries, illnesses, disabilities, and damages alleged herein.

## DAMAGES
## LOSS OF CONSORTIUM

89.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

90.    Plaintiffs TYLER WALL and LORISSA HOTTEL were married on June 9, 2011, and have remained married at all times material hereto.

91.    As a direct and proximate result of the injuries, illnesses, disabilities and/or damages complained of herein with respect to Plaintiff TYLER WALL, and as a direct and proximate result of the acts and omissions of the Defendants, Plaintiff LORISSA HOTTEL has also suffered and will continue to suffer loss of consortium, society, companionship, fellowship

and other valuable services of her husband; and therefore, Plaintiff LORISSA HOTTEL is entitled to damages for her loss of consortium, both past and future.

## COMPENSATORY AND PUNITIVE DAMAGES

92.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

93.     As a result of the above-alleged conduct of the Defendants, Plaintiff TYLER WALL developed mesothelioma, as a consequence of which he has been damaged as follows:

     a.    hospital and medical expenses incidental to Plaintiff TYLER WALL's illness;

     b.    loss of earnings and future earning power of Plaintiff TYLER WALL;

     c.    loss of Plaintiff TYLER WALL's general health, strength, and vitality;

     d.    loss of pecuniary contributions to the heirs of Plaintiff TYLER WALL;

     e.    loss of consortium, society, aid, companionship and services to the heirs of Plaintiff TYLER WALL;

     f.    future loss of consortium, society, aid, companionship and services to the heirs of Plaintiff TYLER WALL;

     g.    pain and suffering of Plaintiff TYLER WALL;

     h,    all other damages recoverable under said Act.

WHEREFORE, Plaintiffs verily believe they are entitled to actual damages against the Defendants, jointly and severally, by reason of said negligence, gross negligence, breach of warranty, false representation, failure to warn, fraud, and other breaches of duty, and willful, wanton, and malicious conduct as alleged herein proximately caused by the fault of the Defendants.  PLAINTIFFS pray for judgment against all Defendants for actual and punitive damages, lost wages and special damages in an amount to be determined by the trier of fact, in excess of $75,000.00 plus interest as provided by law and the costs of this action.

1

## **DEMAND FOR JURY TRIAL**

2

Pursuant to FED. R. CIV. P. 38(b), Plaintiffs respectfully demands a jury trial on the issues

3

triable by jury

4

DATED this 28th day of September, 2021.

5

6

**HENNESS & HAIGHT INJURY LAW**

7

8
  _/s/ Shaun K. Muaina_
SHAUN K. MUAINA, ESQ.
NV BAR No. 12829

9
8972 Spanish Ridge Avenue

10
Las Vegas, Nevada 89148
Telephone: (702) 862-8200

11
Facsimile: (702) 862-8204
Shaun@hennessandhaight.com

12

13
And

14
STUART PURDY
CA BAR No. 239878 (*pro hac vice pending*)

15
TYSON GAMBLE
CA BAR No. 266677 (*pro hac vice pending*)

16
**SIMON GREENSTONE PANATIER, PC**
3780 Kilroy Airport Way, Suite 540

17
Long Beach, California 90806
Telephone (562) 590-3400

18
Facsimile (562) 590-3412

19
spurdy@sgptrial.com
tgamble@sgptrial.com

20

21
And
**MAUNE RAICHLE HARTLEY FRENCH &**

22
**MUDD, LLC**

23
A. GENTRY SMITH
MO BAR No. 46090 (pro hac vice pending)

24
1015 Locust Street, Suite 1200
St. Louis, Missouri 63101

25
Telephone: (314) 241-2003
Fax: (314) 241-4838

26
agsmith@mrhfmlaw.com

27
*Attorneys for Plaintiffs*

28